UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HOMESITE INSURANCE COMPANY,
*Plaintiff*,

v.

MELISSA BREZNIAK AND ALISSA GOGUEN,
*Defendants*.

No. 3:21cv26 (MPS)

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Homesite Insurance Company ("Homesite") filed this action seeking a declaratory judgment that it has no duty to defend or indemnify its insured, Melissa Brezniak, for claims asserted against her in an action brought by Alissa Goguen in Connecticut state court, *Alissa Goguen v. Melissa Brezniak, et al*., No. LLI-CV20-6026658.  In that action, Goguen alleges that in 2019 Brezniak transmitted a sexually transmissible disease to Goguen's husband, who in turn infected Goguen.  Homesite has filed a motion for summary judgment on the grounds that the homeowner's insurance policy under which Brezniak seeks coverage excludes coverage for bodily injury "[w]hich arises out of the transmission of a communicable disease by an 'an insured.'"  ECF No. 22.  Brezniak and Goguen have each filed an opposition to Homesite's motion.  ECF Nos. 25, 26.  For the reasons set forth, the motion is granted.

**I.     FACTS**

The following facts are taken from the parties' Local Rule 56 statements and are undisputed unless otherwise noted.

**Policy Issuance**

In 2013, Homesite issued a homeowners insurance policy ("Policy") to Brezniak as the named insured for her residence in Connecticut.  ECF No. 25-5 at 49.  Homesite sent Brezniak a

"Welcome Package" dated February 12, 2013 that contained the Policy's declaration page and provided Homesite's contact information. ECF No. 26 at 46-47, Brezniak's Additional Material Fact ("Brezniak's AMF") ¶¶ 1-2; ECF No. 25-2, Goguen's Additional Material Facts ("Goguen's AMF") ¶¶ 7-8; ECF No. 25-6 at 5. The Welcome Package informed Brezniak that if any of the policy information needed to be corrected, she must advise Homesite within 30 days of receipt. ECF No. 26 at 47, Breniak's AMF ¶ 2; ECF No. 25-2, Goguen's AMF ¶ 4. "None of the documentation provided in the 'Welcome Package' referenced the communicable disease exclusion." ECF No. 26 at 47, Brezniak's AMF ¶ 2; ECF No. 25-2, Goguen's AMF ¶ 8. Homesite also sent Brezniak a letter "'at the latest' on February 14, 2013 providing her access to a website where she could access copies of all her insurance documents, including the declaration, the Policy, its endorsements, and any exclusions contained therein." ECF No. 26 at 47, Brezniak's AMF ¶ 3; ECF No. 25-2, Goguen's AMF ¶ 9; ECF No. 25-6 at 5. Homesite sent Brezniak a hard copy of the Policy on March 13, 2013, "likely" after she had made her first payment. ECF No. 26 at 47, Brezniak's AMF ¶ 4; ECF No. 25-2, Goguen's AMF ¶ 10; ECF No. 25-6 at 5. Brezniak avers in her affidavit that "by the time [she] received a copy of the policy from Homesite . . . [she] was already bound to [her] mortgage, which required [her] to name the mortgage company as a payee beneficiary under said policy." ECF No. 27 at 12, Brezniak Aff. ¶ 6. The March 13, 2013 packet included a list of optional additional coverages and endorsements but coverage for losses arising out of the transmission of a communicable disease was not included on the list of optional coverages. ECF No. 26 at 47, Brezniak's AMF ¶ 5; ECF No. 25-2, Goguen's AMF ¶ 11. When Brezniak purchased the policy in 2013, she knew she was infected with Herpes Simplex Virus Type 1. ECF No. 26 at 48-49, Brezniak's AMF ¶ 11; ECF No. 25-2, Goguen's AMF ¶ 17. She avers that she "was never made aware there was an exclusion in the policy that would relieve

[Homesite] of coverage responsibility and liability in the event the claim related to cold sores and/or HSV-1." ECF No. 27 at 11-12, Brezniak Aff. ¶ 4.  Brezniak further states in her affidavit that she "would have found the communicable disease exclusion problematic" and "would have been willing to pay an increased premium or otherwise negotiate over the matter if presented with the opportunity" but that she was "never afforded an opportunity to negotiate the communicable disease exclusion." *Id.* at ¶¶ 7-8.

After Homesite issued the policy in 2013, Brezniak renewed the policy several times thereafter.  ECF No. 25-5 at 113 (2014-15), 117 (2015-2016), 121 (2016 - 2017), 153 (2017- 2018), 157 (2018 - 2019), 161 (2019 - 2020). ECF No. 25-5 at 159-161.  She was insured under the policy during the period of February 9, 2019 to February 9, 2020, the timeframe of the events alleged in the underlying state action.  ECF No. 1-2 at 2, ECF No. 22-2 at ¶ 2.

### Policy Language

The Policy contains the following pertinent definitions:

1.  "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. . . .

\*\*\*

5.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
    a. "Bodily injury"; or
    b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

ECF No. 1-2 at 5.  Under Section II entitled "Liability Coverages," the Policy provides

### COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

3

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .
***

**SECTION II – EXCLUSIONS**
**1. Coverage E – Personal Liability** . . . do[es] not apply to "bodily injury" or "property damage" . . . .

> **j**. Which arises out of the transmission of a communicable disease by an 'insured'[.]

ECF No 1-2 at 15-17.

**Underlying State Action**

In November 2020, Goguen filed a lawsuit against Brezniak and Dominic Goguen, Goguen's husband, in Connecticut state court. ECF No. 22-2 at ¶ 5. On September 23, 2021, Goguen filed the operative Second Amended Complaint, ECF No. 25-4 at 4, alleging the following claims against Brezniak:

-Count 1, entitled "Negligent Transmission of Disease," alleges that Brezniak: was "infected with a disease," "at some time during or prior to July 2019, [Brezniak] had sexual relations with Dominic Goguen on one or more occasions," "had a duty to disclose that she had a disease to her sexual partners, including without limitation, Dominic Goguen," "breached said duty by failing to disclose her infection to Dominic Goguen prior to engaging in sexual intercourse with him," and "knew it was reasonably foreseeable that Dominic Goguen would contract the disease as a result of having sexual intercourse with her" and "unknowingly pass it on to his wife." ECF No. 25-4 at 4, Ct 1 ¶¶ 1 – 10. The complaint further alleges that Dominic Goguen "did in fact contract the disease and subsequently infected his wife" and that Brezniak's "conduct was negligent in that she had sex with Dominic Goguen when she knew she had a disease, when she knew that [Goguen] and her husband continued to be engaged in intimate acts, and when she knew that

4

[Goguen] had no knowledge of the affair and thus no reasonable opportunity to protect herself." ECF No. 25-4 at 5, Ct 1 ¶ 12.

Count 2, entitled "Negligent Failure to Warn," alleges that Brezniak failed to warn Goguen she was at risk of contracting the disease if she had sexual relations with her husband, Dominic Goguen, and that Brezniak also failed to warn Dominic Goguen that she had a disease. ECF No. 25-4 at 6-7, Ct 2 ¶ 12.

Count 3, entitled "Negligent Infliction of Emotional Distress," alleges that: Brezniak's "conduct created an unreasonable risk of causing emotional distress" to Goguen; "[the fact that Goguen] would suffer extreme emotional distress if she was infected with a disease was a reasonably foreseeable consequence of [Brezniak's] decision to have sexual intercourse with Dominic Goguen" and Brezniak "caused [Goguen] to suffer emotional distress and such distress was severe enough to cause [Goguen] bodily harm, as the stress [Goguen] has experienced as a result of having contracted a disease has already resulted in increased frequency and severity of painful outbreaks, and will continue to do so periodically for the rest of [her] life." ECF No. 25-4 at 8-9, Count 3, ¶¶ 12-14.

Count 4, entitled Intentional Infliction of Emotional Distress, alleges that Brezniak knew "it was reasonably foreseeable that Dominic Goguen would contract a disease as a result of having sexual intercourse with her" and that Goguen and her husband "continued to engage in intimate acts" but "failed to inform [him] of her disease." The complaint further alleges that it was "reasonably foreseeable that Dominic Goguen would not only contract, but also unknowingly pass on, the disease to [Goguen]" and that Brezniak's "failure to inform [Goguen] that she was at risk of contracting a disease if she had relations with [Dominic Goguen] constituted extreme and outrageous conduct." ECF No. 25-4 at 9-10, Ct 4 ¶¶ 1- 10. The complaint also alleges that

5

Brezniak's failure to inform Dominic Goguen "of her disease after they had sexual intercourse (if not before), so that he could at least take measures to protect [Goguen] from becoming infected with a disease, also constituted extreme and outrageous conduct." ECF No. 25-4 at 10, Ct 4 ¶ 10.

Count 9 alleges as to both Brezniak and Dominic Goguen civil conspiracy to commit assault in the third degree in violation of Conn. Gen. Stat. § 53a-61. Specifically, Goguen alleges that Dominic Goguen and Brezniak "knew that the disease would likely be transmitted to [Goguen] if [they] engaged in sexual intercourse with each other" yet did so anyway, "infecting [Goguen] with a disease." ECF No. 25-4 at 16-17, Ct 9 ¶¶ 1- 10.[1]

As to the claims Goguen asserts against Brezniak, Goguen alleges that she suffered "infection with a disease," anxiety, depression, embarrassment, and "mental, emotional, and physical pain and suffering." ECF No. 25-4.

Brezniak, in turn, filed a Special Defense in the underlying state action alleging contributory negligence as to Goguen and a Cross-Claim of indemnification as to Dominic Goguen. ECF No. 26 at 61-64. She avers in her affidavit that she told Dominic Goguen that she suffered from cold sores, but he seemed "unfazed and initiated sexual activity that same day" and told her that he and Goguen were not "being intimate." ECF No. 27 at 12-13, Brezniak Aff. ¶¶ 9, 12, 15.[2] She believes that Dominic Goguen had sexual relations with other women and that it is possible that he "contracted HSV-1 from another source." ECF No. 27 at 13, Brezniak Aff. ¶¶ 19-20.

---

[1] Goguen also asserts claims against her husband Dominic of negligence (count 5); negligent failure to warn (count 6); negligent infliction of emotional distress (count 7); battery (count 8); and civil conspiracy with Brezniak (count 9).

[2] After Brezniak filed her opposition to Homesite's motion, she requested, and was granted, leave to file an amended affidavit, see ECF No. 30. Homesite did not object to Brezniak's motion and maintains that Brezniak's revised affidavit does not alter its analysis. ECF No. 29 at 2 n.1

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

### B. Policy Interpretation

Under Connecticut law,[3] "[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Connecticut Medical Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008) (citation and quotation marks omitted).

> If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and

---

[3] Because this is a diversity case, the court "must apply the conflict-of-laws rules of the state in which the federal court sits," here, Connecticut. *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (citation omitted). "Connecticut follows the 'most significant relationship' approach of the Restatement (Second) for analyzing choice of law issues involving contracts," *BMO Harris Bank N.A. v. P B & J Logistics Inc.*, No. 3:18CV221, 2020 WL 1532278, at *3 n.5 (D. Conn. Mar. 31, 2020), and recognizes "a rebuttable presumption in favor of applying the law of the state which the parties understood was to be the principal location of the insured risk." *SA Hospitality Group, LLC v. Hartford Fire Ins. Co*., No. 3:20CV1033, 2021 WL 2291116, at *4 (D. Conn. June 3, 2021) (internal quotation marks omitted). Although the parties do not brief the issue, they both cite Connecticut law in their memoranda, and I agree that Connecticut, where the insured property is located, has the most significant interest in this policy and that Connecticut law applies to the interpretation of the policy. *See Middesex Ins. Co. v. Mara*, 699 F. Supp.2d 439, 446 (D. Conn. 2010).

ordinary meaning.... When interpreting an insurance policy, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result.... As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Id.* at 5-6 (citations, quotation marks, and alterations omitted).

### C.     Duty to Defend

"The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 395 (2000).  More specifically, "[w]hether an insurer is obligated to defend an insured is determined by the facts in the underlying complaint, and not the titles assigned to the particular causes of action."  *Covenant Ins. Co. v. Sloat*, No. 385786, 2003 WL 21299384, at *8 (Conn. Super. Ct. May 23, 2003) (internal quotation marks and citation omitted).

> An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage. Indeed, it is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage ... [T]he duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage.

*Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739 (2014) (internal quotation marks, alterations, and citations omitted).  "On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." *Community Action for Greater Middlesex County, Inc.*, 254 Conn. at 399.

8

### D. Duty to Indemnify

"Because the duty to defend is significantly broader than the duty to indemnify," *DaCruz v. State Farm Fire & Cas. Co.,* 268 Conn. 675, 688 (2004), if there is "no duty to defend, then there is no duty to indemnify." *Travelers Home & Marine Ins. Co. v. Zachs*, No. HHDCV126028347S, 2013 WL 1800595, at *1 (Conn. Super. Ct. Apr. 3, 2013).

## III. Discussion

Homesite argues that it has no duty to defend or indemnify Brezniak for the claims in the underlying state action because the Policy excludes coverage for bodily injury "[w]hich arises out of the transmission of a communicable disease by an insured." Brezniak and Goguen both argue that the exclusion is unenforceable because it is procedurally and substantively unconscionable. Homesite responds that the Defendants have waived this defense and in any event, the defense fails.

### Waiver

Homesite asserts that unconscionability is an affirmative defense under Connecticut law that the Defendants were required to plead under Fed. R. Civ. P. 8(c) but failed to do so. ECF No. 28 at 2. "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994). "Such failure may be excused, however, where the opposing party has been given 'notice and an opportunity to respond' to an affirmative defense raised at a late stage in the litigation." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:04CV1702(JBA), 2007 WL 9759055, at *1 (D. Conn. Nov. 20, 2007) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003)). "Where the opposing party would not be 'unfairly prejudice[d],' disallowing the defense may not be necessary." *Id.* (quoting *Am. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1988)).

9

Here, because Homesite has thoroughly addressed the Defendants' arguments as to unconscionability, I decline to find waiver and instead address the merits of the defense.

### Unconscionability

"The question of unconscionability is a matter of law to be decided by the court based on all facts and circumstances of the case." *Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 87 (1992) (internal quotation marks and citations omitted). "The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." *Id.* at 88. "Under Connecticut law, the party that raises unconscionability as a defense to the enforcement of any contract typically has the burden of showing that the contract is both procedurally and substantively unconscionable." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) (citing *Bender v. Bender*, 292 Conn. 696, 732 (2009)).

### Procedural Unconscionability

Procedural unconscionability "focuses on the process by which the allegedly offensive terms found their way into the agreement," *Cheshire Mortg. Serv., Inc.*, 223 Conn. at 87 n.14 (internal quotation marks and citation omitted), and is "intended to prevent unfair surprise." *Smith v. Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349 (1998). "Under Connecticut law, a court cannot find procedural unconscionability unless the party opposing enforcement of a contractual provision has introduced some specific evidence of overreaching by the other party in the formation of the agreement." *Daimlerchrysler Ins. Co., LLC v. Pambianchi*, 762 F. Supp. 2d 410, 423 (D. Conn. 2011), *aff'd sub nom. DaimlerChrysler Ins. Co. v. Pambianchi*, 469 F. App'x 65 (2d Cir. 2012).

### Substantive Unconscionability

"Substantive unconscionability focuses on the 'content of the contract,' *Cheshire Mortg.*

10

*Serv., Inc.*, 223 Conn. at 80 n. 14 (internal quotation marks and citation omitted), and "is intended to prevent oppression." *Rockstone Cap., LLC v. Caldwell*, 206 Conn. App. 801, 809, *cert. denied*, 339 Conn. 914 (2021). "Substantive unconscionability is indicated by contract terms so one-sided as to shock the conscience .... Alternatively, [s]ubstantive unconscionability consists of an allocation of risks or costs which is overly harsh or one-sided and is not justified by the circumstances in which the contract was made." *Carbone v. Marcus*, No. CV186085128S, 2021 WL 2929802, at *9 (Conn. Super. Ct. June 15, 2021) (internal quotation marks and citations omitted). Although generally Connecticut courts have held that "both procedural and substantive unconscionability must be present," *Billie v. Coverall N. Am., Inc*., 444 F. Supp. 3d 332, 348-49 (D. Conn. 2020), "[i]n some rare cases, a contractual provision may be so outrageous as to warrant a court's refusal to enforce it based on substantive unconscionability alone." *D'Antuono*, 789 F. Supp. 2d at 327. *See Smith*, 247 Conn. at 353 ("Even in the absence of procedural unconscionability, [the defendant] might avoid liability ... if he could establish that the clause was substantively unconscionable").

**Exclusion is Not Procedurally Unconscionable**

Defendants maintain that the exclusion is procedurally unconscionable.[4] In support, they argue that the Policy is a contract of adhesion in that Brezniak was not provided an opportunity to change or remove any terms in the policy and that by the time she received a copy of the Policy, she "was already bound to [her] mortgage, which required [her] to name the mortgage company as a payee beneficiary under said policy." ECF No. 27 at 12, Brezniak Aff. ¶ 6; *see Brown v. Soh*,

---

[4] Defendants appear to argue that a showing of procedural unconscionability alone is sufficient to render the exclusion unenforceable. ECF No. 25-1 at 10 ("[T]he procedural posture leading to the formation of the contract renders the exception void based on procedural unconscionability alone[.]"). They do not offer authority in support of this proposition and Connecticut caselaw is to the contrary. *See Daimlerchrysler Ins. Co., LLC*, 762 F. Supp. 2d at 422 ("the Court is not aware of any Connecticut precedent which would permit the Court to void a contractual provision based solely on procedural unconscionability").

11

280 Conn. 494, 504 (2006) ("The most salient feature of adhesion contracts is that they are not subject to the normal bargaining processes of ordinary contracts, and they tend to involve standard form contracts prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms.") (internal alterations and quotation marks omitted)). Defendants assert that "Homesight provided notice of the exclusion after the effective date of the Policy . . . so as to prevent [Brezniak] from having a meaningful opportunity to find an alternative policy." ECF No. 25 at 12. In addition, they point out that the "menu" of optional additional coverages that could be purchased did not include coverage for transmission of a communicable disease, ECF No. 25-5 at 61, that Brezniak "was never made aware" of the exclusion, and that she "was never afforded an opportunity to negotiate the communicable disease exclusion." ECF No. 27 at 12, Brezniak Aff. ¶¶ 4, 8. *See* ECF No. 26 at 23 -27; ECF No. 25-1 at 11-13.

Even when the evidence is viewed in the light most favorable to the Defendants, it falls short. As Homesite points out, and Defendants concede, the exclusion is not unenforceable simply because of the adhesive nature of the Policy and the unequal standing of the parties. *See Empire Fire & Marine Ins. Co.*, 655 F. Supp.2d at 160-61 ("merely showing that an insurance contract is a contract of adhesion does not lead inextricably to its invalidation - or as sought here, enforcement of all contract terms except the exclusions"). "Rather, the court must ask whether the disproportionate bargaining power of the parties necessarily results in contractual terms that contravene public policy or are otherwise unconscionable or void." *Id.* Defendants have not shown overreaching or unfair surprise required to demonstrate procedural unconscionability. Homesite's Welcome Letter provided Brezniak with access to a website where she could access the Policy, ECF No. 25-2, Goguen's AMF ¶ 9, and on March 13, 2013 Homesite sent Brezniak a

hard copy of the Policy. ECF No. 26, Brezniak's AMF ¶ 4; ECF No. 25-2, Goguen's AMF ¶ 10; ECF No. 25-6 at 5. Defendants' argument that the exclusion was an unfair surprise because Brezniak received the policy after the February 9, 2013 effective date is unavailing. She renewed the Policy multiple times after 2013 and before the events giving rise to the underlying lawsuit, and has made no showing that she was prevented from ascertaining the contents of the Policy. *See Rockstone Cap., LLC v. Caldwell*, 206 Conn. App. 801, 812, *cert. denied*, 339 Conn. 914 (2021) ("[A] contracting party's negligent failure to read and understand an agreement has consistently been rejected as an unconscionability defense to contract enforcement.") There is no suggestion that she could not have switched insurance policies if she wished to. Insofar as the Defendants argue that Homesite was obligated to draw Brezniak's attention to the exclusion (see ECF No 26 at 26, arguing that Homesite "fail[s] to demonstrate that specific disclosure of th[e] exclusion was ever made"), they are incorrect. "[T]he Connecticut Supreme Court has soundly rejected the notion that provisions in form contracts are procedurally unconscionable whenever the party with greater bargaining power fails to direct the other party's attention to important provisions." *D'Antuono*, 789 F. Supp. 2d at 328. *See Smith*, 247 Conn. at 352 ("procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement."). Nor was the exclusion "obscure" or "buried" in the Policy as Defendants contend. ECF No 25-1 at 12, 13; ECF No. 26 at 25, 26. It is undisputed that the exclusion appeared in "identical font type, size and color" as other exclusions. ECF No. 25-1 at 12; ECF No. 26 at 25; ECF No. 25-5 at 18. In sum, even assuming the truth of the facts Defendants proffer in support of their unconscionability

argument, they fail to establish, as a matter of Connecticut law, that the exclusion is procedurally unconscionable.[5]

### Exclusion is Not Substantively Unconscionable

Defendants also argue that the exclusion is substantively unconscionable. They reiterate their arguments as to the "adhesive nature" of the Policy and the timing of when Homesite sent Brezniak a copy of the policy. In addition, they contend that the exclusion is a "draconian" one that would "work an oppressive result" to the Defendants. ECF No. 25-1 at 14-15. Notably, they have not pointed the Court to, nor has the Court's research located, any cases in which the Connecticut Supreme Court, or any court applying Connecticut law, has suggested that a communicable disease exclusion in a homeowner's insurance policy is sufficiently oppressive to be unconscionable. Defendants have not shown that the exclusion is one that "no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other." *Smith*, 247 Conn. at 349.

### No Genuine Issue of Material Fact as to Duty to Defend

Brezniak asserts that even if the Court finds the exclusion enforceable, it should nonetheless deny summary judgment because "there is a factual dispute" as to whether there is coverage under the Policy. ECF No. 26 at 2. Specifically, Brezniak points to her Special Defense, and Cross Claim in the state action in which she alleges contributory negligence as to Goguen and Dominic Goguen, ECF No. 26 at 61 – 63, and posits that her "allegations could result in fault and causation being attributed to Mr. Gougen and Ms. Gouge[n]" and not her. ECF No. 26 at 31. If so, she continues, "[t]his would render the underlying allegations regarding Ms. Gougen's bodily

---

[5] Defendants assert that "[a]lternatively, there are genuine issues of material fact related to the process by which the exclusion became a part of the policy that precludes the granting of summary judgment" ECF No 26 at 23 but do not elucidate the issue or identify the facts in dispute. And as indicated, even taking the facts alleged by the Defendants as true, their allegations do not demonstrate that the exclusion is unconscionable.

injury as groundless and/or false as against Ms. Brezniak. Groundless and/or false claims of bodily injury are lawsuits covered by the policy in question . . . ." *Id.*

Brezniak's argument is unavailing. In determining whether a duty to defend exists, "it is the allegations in the complaint that are determinative and not the merits of those allegations. The key is what the plaintiffs in the underlying action might be able to prove, not will prove. The ultimate success of the underlying action is irrelevant for determining whether the insurer has the duty to defend." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 450 n.12 (D. Conn. 2010). "[T]he issue is one of pleading, not evidence." *Covenant Ins. Co.,* 2003 WL 21299384, at *9. Goguen alleges in the underlying state complaint that she suffered injuries as a result of Brezniak's transmission of a sexually transmissible disease. These allegations plainly fall within the exclusion and as a result, Homesite has no duty to defend. *See Colony Ins. Co. v. Jack A. Halprin, Inc*., No. 3:10CV1059(CSH), 2012 WL 2859085, at *12 (D. Conn. July 11, 2012) (holding in a declaratory judgment action that if the underlying action "contains allegations that fall within the assault and battery exclusion, plaintiff is entitled to judgment that it has no duty to defend as a matter of law").

Finally, Brezniak makes a cursory argument that summary judgment is not warranted because "[i]n reviewing a communicable disease exclusion, the Courts have found that an unintended transfer of a communicable disease as between any plaintiff and defendant is a covered bodily injury under a homeowner's insurance policy and not subject to any communicable disease exclusion," citing in support *State Farm Cas. Co v. Eddy*, 267 Cal. Rptr. 379 (1990). But *Eddy* did not involve a communicable disease exclusion. Rather, the issue before the court concerned whether the alleged conduct could be an unexpected act as opposed to intentional conduct, which has no bearing on the issue involved in this case.

15

**No Duty to Indemnify**

Because Homesite has no duty to defend Brezniak in the underlying state action, it has no duty to indemnify her for any damages arising from that action.

## IV.    Conclusion

For these reasons, Homesite's motion for summary judgment (ECF No. 22) is granted. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          January 26, 2022